Shirley A. Wing, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Alice M. King, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review.

104

Appeal, No. 789 C.D. 1979 argued May 5, 1980, before Judges WILKINSON, JR., CRAIG and MACPHAIL, sitting as a panel of three. Appeal, No. 803 C.D. 1979 argued May 8, 1980, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three. Reargued after consolidation December 9, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MACPHAIL, WILLIAMS, JR. and PALLADINO, sitting en banc.

*Charles J. Duke,* for petitioner, Shirley A. Wing.

*Paul Osborne,* for petitioner, Alice M. King.

*Stephen Lipson,* Assistant Attorney General, with him *Charles G. Hasson* and *John T. Kupchinsky,* Assistant Attorneys General, *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

Opinion by Judge Blatt, February 26, 1981:

In these consolidated cases the claimants, Shirley A. Wing and Alice M. King, appeal from decisions of the Unemployment Compensation Board of Review (Board) disallowing their appeals from the referee's determinations that each was ineligible for unemployment benefits under Section 402(b)(1) of the Unemployment Compensation Law (Law)[1] because each had voluntarily terminated her employment without necessitous and compelling cause. We will separately consider the merits of each case, and, because the cases involve similar issues, we will then consider whether or not to remand the cases for additional findings.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b) (1).

No. 789 C.D. 1979

Shirley A. Wing appeals from the decision of the Board that she was ineligible to receive benefits because she voluntarily terminated her employment as a sales clerk with Brown's Boot Shop without necessitous and compelling cause.

The record supports the referee's findings that Ms. Wing began an authorized sick leave on April 4, 1978. A note from her physician indicated that as of July 31, 1978, she was able to return to work. On August 9 and 10, 1978, she contacted the store manager and then the store owner to discuss her vacation period. Although she was not granted permission to begin a vacation, she testified that, in view of her understanding of company policy which provided three weeks vacation after fifteen years of regular employment, she was entitled to vacation time. She did not report to work when her sick leave ended, and, by way of letter dated August 14, 1978, the employer notified her that it considered her employment with the shop terminated.[2] The employer's witness testified that the job had remained available for Ms. Wing until the termination date of August 14.

The referee deemed Ms. Wing's termination to be voluntary because she had failed to "keep her employer advised" of her "future intentions" with regard to returning to work, and, therefore, had abandoned her employment. The referee seemed to be applying that line of cases in which this Court has held that prolonged absences are regarded as voluntary terminations where the length and circumstances of the absence manifest an intention to abandon the employ-

---

[2] The notice stated: "Effective this date, your employment with Brown's Boot Shops, Inc. is terminated. You may pick up your (3) three weeks vacation pay Friday, August 18, 1978 at Brown's Boot Shops-Bradford, Pa."

ment. *See Unemployment Compensation Board of Review v. Thomas,* 24 Pa. Commonwealth Ct. 136, 354 A.2d 46 (1976).

Ms. Wing asserts, however, that an absence of only four workdays, the time which elapsed between her last contact with her employer and the day on which the termination letter was sent, was insufficient to evince an abandonment of employment. Her view is that she was discharged either for failing to report to work or for taking an unauthorized vacation. We agree.

The factual circumstances of this appeal are distinguishable from those in the case of *Schwarzenbach v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 137, 387 A.2d 519 (1978), on which the Board relies. In that case, we affirmed the compensation authorities' determination that an employee's four-day unauthorized absence, after a request for permission to take leave time was denied, constituted a voluntary termination as a matter of law.[3] The critical element in *Schwarzenbach, supra,* was that the employer notified the employee—during the four-day unauthorized leave—that his failure to contact the employer would be considered an abandon-

---

[3] Because the employee in *Schwarzenbach* left work without authorization and neither reported back nor maintained contact with his employer, or provided compelling or necessitous reasons for his absence, we distinguished and deemed inapposite that line of cases holding that unauthorized absences are not tantamount to voluntary termination. *See Firmstone v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 158, 370 A.2d 749 (1977) ; *Hutt v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 57, 367 A.2d 390 (1976) ; *Morgan v. Unemployment Compensation Board,* 174 Pa. Superior Ct. 59, 98 A.2d 405 (1953). In these cases we held that the employees, although perhaps chargeable with willful misconduct for having taken unauthorized absences, were not ineligible for compensation benefits because the unauthorized absences did not amount to voluntary separations from their employment.

ment of the employment. Similarly, in those cases where requested vacations are denied, and the employee is notified that taking the time will result in a discharge, the resulting separation from employment is deemed voluntary. *Manjares v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 317, 325 A.2d 644 (1974).

The missing element in the present case, however, is an event, such as the letter in *Schwarzenbach, supra,* or the threat of discharge in *Manjares, supra,* shifting the onus of the choice of actions onto the employee, so that intention may reasonably be discerned in the employee's action or inaction.

Here, the referee found only that, although Ms. Wing was not granted vacation, she "assumed she was on vacation" and she was "informed by letter . . . that she was terminated." The referee did not find that the employer threatened to discharge her if she insisted on pursuing her vacation plans. Nor was there evidence in the record that she was informed, at any time before she was discharged, that failure to return or to contact the employer would result in her discharge.

Because we believe that a four-day absence is not, without additional evidence that the employee has abandoned her employment, a sufficiently prolonged period of time as a matter of law to constitute such an abandonment, we must conclude that the Board erred as a matter of law in disqualifying the claimant from benefits under Section 402(b)(1) and we must reverse its order dismissing her appeal.

### No. 803 C.D. 1979

Alice M. King was employed by Centre Engineering (employer) when on or about March 17, 1978 she requested and was granted a six-week leave of absence. Near the end of the initial six-week leave peri-

od, she received a letter from the employer advising her that it was necessary for her to renew her request for sick leave if she wished to remain away for a longer period, and she then submitted a note from her doctor on May 1, 1978, indicating her continued need for a leave. She argues here that she was under the mistaken belief that the note served to extend her sick leave for an additional six weeks, but, in fact, the note recommended a leave only until June 1, 1978. She had no further communication regarding her employment status until she received a telephone call from her insurance company advising her that the employer was no longer paying her premiums. She immediately called the employer on June 9, 1978, at which time she was told that her services had been terminated. Although she secured another note from her doctor the same day, which again recommended a further extension of leave, the termination remained in effect. Her application for unemployment benefits was denied by the Bureau of Employment Security, a referee and the Board. This appeal followed.

Ms. King contends that the compensation authorities erred in characterizing her termination as voluntary, insisting that she was in fact discharged. We have carefully examined the record here and we cannot find sufficient evidence to support the conclusion that she voluntarily left her work.

In *Haseleu v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 96, 316 A.2d 159 (1974), we quoted with approval language from the Superior Court's decision in *Morgan v. Unemployment Compensation Board*, 174 Pa. Superior Ct. 59, 61, 98 A.2d 405, 406 (1953), where that court declared that "[u]nauthorized absenteeism, . . . particularly when the time off had been requested previously, may constitute just cause for dismissal by an employer, but is not tantamount to resignation.''

It is true that an employee's absence from work for an unreasonable length of time without notice to the employer of an intention not to abandon the job may constitute a voluntary quit. *Ritchey v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 397, 395 A.2d 673 (1978). We do not believe, however, that Ms. King's absence here can be characterized as unreasonably long in view of the evidence in the record that her extension of leave notice was due only three days prior to her contact with the employer, at which time she secured and submitted another doctor's certificate which indicated her continued need for leave. We must, therefore, reverse the order of the Board.

## Conclusion

The question remains as to whether we should now remand these cases to the Board for a computation of benefits only or remand so that the employers may present any evidence they may have that the claimants had been discharged for willful misconduct and are consequently ineligible for benefits pursuant to Section 402(e) of the Law.[4] And we believe that a determination to remand for findings on the issue of willful misconduct depends upon whether or not the employer, who has the burden of proving willful misconduct,[5] had an opportunity to do so.

Our review of administrative procedures and of regulations promulgated by the Department of Labor and Industry governing unemployment compensation, leads us to conclude that the employers did not have an effective opportunity to raise this issue and that these cases should be remanded to give them this opportu-

---

[4] 43 P.S. §802(e).

[5] *Unemployment Compensation Board of Review v. Dravage,* 23 Pa. Commonwealth Ct. 636, 353 A.2d 88 (1976).

nity. We note that 34 Pa. Code §101.87, which delincates the issues that may be raised at a referee's hearing upon an appeal from a determination by the Office of Employment Security, provides:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

We have consistently construed this language to require that, in the absence of a contrary agreement among the parties, the evidence adduced and the determination made at the referee's hearing shall be limited to the legal issues expressly ruled upon by the Office of Employment Security in its determination notice sent to the parties. *Hanover Concrete Co. v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 463, 402 A.2d 720 (1979); *Corressel v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 437, 385 A.2d 615 (1978); *Bilsing v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 199, 382 A.2d 1279 (1978). In *Corressel, supra*, for example, where the Office notified the claimant that she was ineligible for benefits under Section 402(b)(1) of the Law because she had voluntarily quit her former employment, we held that 34 Pa. Code §101.87 prohibits the referee from basing his determination of ineligibility on the able-and-available issue of Section 401(d) of the Law. And in *Bilsing, supra*, we held that, even though the Office had found the claimant to be ineligible because

of willful misconduct, the employer was precluded from raising at the referee's hearing *instances* of misconduct different from those delineated in the Office's determination notice. Thus, because the Office of Employment Security did not determine here that either employee was discharged and that such discharge was or was not the result of willful misconduct, the employers herein did not have an effective opportunity to raise the issue of willful misconduct.[6]

We must therefore reject the argument advanced by the claimants here that, by remanding these cases to the Board to permit the employer to present evidence of willful misconduct, we are, in effect, giving the employer a "second bite of the apple" to meet its burden of proving willful misconduct. To the contrary, because the Office did not expressly rely upon

---

[6] The Board may, in certain instances under 34 Pa. Code §101.107, consider issues on appeal from the referee's determination which were not raised or ruled upon in the referee's hearing, but the Board in this case did not consider additional issues or take additional testimony. Section 101.107 states:

(a) In connection with the consideration of any appeal to the Board from the decision of a referee, the Board may consider any issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings. However, issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

(b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

or consider the issue of discharge and willful misconduct,[7] the employers were precluded under 34 Pa. Code §101.87 from raising these issues at the referee's hearing. Our reversal of the Board's finding of voluntary termination has the effect of a finding, for the first time in these proceedings, that Wing and King were discharged and are presumptively entitled to benefits, and we therefore believe that the employers should now have the opportunity to assert the defense that the discharges were the result of the claimants' willful misconduct.

We will remand these cases to the Board for the taking of additional evidence on this issue.

## ORDER

AND Now, this 26th day of February, 1981, the orders of the Unemployment Compensation Board of Review in the above-captioned cases are reversed and the records are remanded for further proceedings in accordance with the foregoing opinion.

Judge WILLIAMS dissents.

---

[7] We recognize that the employers did have an opportunity to assert to the Office of Employment Security that the employee was discharged for willful misconduct. In both of these cases, for example, the employers completed a small form sent by the Department of Labor and Industry called a "Notice of Application" in which the employer was requested to explain in detail, in a space of one-half inch by four inches, the reason for the employee's separation from employment. The response of both of the employers in these cases was to the effect that the employees refused to return to work after their leaves had expired. The Office of Employment Security also interviewed the employer in the Wing case concerning Wing's dismissal and this interview was summarized in its determination notice, but we have no record of such an interview in the King case.

It is clear that the proceedings conducted by the Office of Employment Security are so informal and incapable of review that the employer's statements to the Office cannot constitute "pleadings" to which the employer is bound.

DISSENTING OPINION BY JUDGE CRAIG:

Where the employers have proceeded all along on the basis that the claimants voluntarily quit their jobs, there is no warrant for remanding these cases, two years after the claims were filed, so that the employers now may oppose the claims upon a new theory.

In the *King* case, the testimony closed as follows:

BY EMPLOYER:

> It's my contention it was a voluntary quit with full knowledge of her responsibility to the employer.

REFEREE TO EMPLOYER:

> Q. Anything else?
> A. That's it.

In the same case, the small space on the written initial Employer's Statement was sufficiently large for the employer to certify:

> Alice was on Sick leave from 3-17-78 thru 6-1-78. She did not return to work when her leave expired.

In the *Wing* case, the Employer's Statement certified:

> Refused to return to work when she was requested and needed. Miss Wing was not on vacation.

Although it is entirely sound that we should not confine any employer to the defense expressed in the initial Employer's Statement, and although the law is that an employer may actually *proceed* before the referee and board on a new theory (different from the initial Office of Employment Security ruling) only if the claimant agrees or the board allows, *Corressel v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 437, 385 A.2d 615 (1978), this rule certainly does not prevent the employer from *raising*—that is, proposing—the new issue.

Before the referee, 34 Pa. Code §101.87 provides that "any issue in the case may, with the approval of the parties, be heard," if the referee determines that "the speedy administration of justice" will be served "without prejudice" to any party. In *Bilsing v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 199, 382 A.2d 1279 (1978), the new theory being opposed and not agreed to, we held that evidence on the different issue could not be taken; we did not hold that the employer was precluded from raising new matters, in the sense of offering them with the possibility that the claimant and referee would be agreeable to proceeding with their consideration.

In similar language, 34 Pa. Code §101.107(b) expressly permits the board to consider new issues, provided the parties and the board agree to do so. Thus any employer has a second ample opportunity to go on record as to a changed defense.

Before we remand these cases for still more rounds on the basis of the new employer misconduct defense, we should at least require that the employer (or the Commonwealth) shall have thus *proposed* the new defense before the referee or even the board. A proposed employer's defense, if then rebuffed by a short-sighted claimant or by an erring referee or board, would have nevertheless been put on record, and we could in such a case remand for a second round justly deserved by the employer.

Our rule, reaffirmed many times in many types of cases, is that, once a case has reached our court, it is too late to raise a new non-jurisdictional issue not previously placed on the record. In *Mitchell v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 291, 405 A.2d 598, 600 (1980), for example, we recently shut the door on a claimant's attempt to present an alternative basis for compensation because it had not been presented below.

Because we have never exempted private parties or the Commonwealth itself from that rule, we should not exempt the unemployment compensation authorities or employers from the principle which we have applied to everyone else.

Particularly we should not abandon it in such cases as these, where a new theory of defense has been devised, after two years of proceedings, by afterthought. Long delay in resolving unemployment compensation claims misses very widely the purpose of the program. A claimant should be penalized by the extension of delay consequent upon a remand only if the claimant has earlier restricted the issues when the defender has sought otherwise.

The remand policy being here considered presents a question of first impression. Although previous decisions have granted remands, neither we nor the Superior Court have ever grappled with the principles involved in doing so, until now. The instances of previous remand are reviewed in a footnote.[1]

---

[1] The Superior Court in *Morgan v. Unemployment Compensation Board of Review*, 174 Pa. Superior Ct. 59, 98 A.2d 405 (1953) remanded for consideration of willful misconduct, but the willful misconduct in question had clearly been raised in that case; indeed, willful misconduct had been the specific basis for the refusal of benefits by the board, as distinguished from the referee's basis.

In *Haseleu v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 96, 316 A.2d 159 (1974), in *Unemployment Compensation Board of Review v. Harper*, 23 Pa. Commonwealth Ct. 197, 350 A.2d 920 (1976), and in *Firmstone v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 158, 370 A.2d 749 (1977), we remanded for consideration of willful misconduct, specifically stating in those cases that the board had not considered that question. However, those opinions do not indicate whether or not the question had ever been raised below.

In *Hutt v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 57, 367 A.2d 390 (1976) we reversed for the granting of benefits, with no mention of what had been considered. In this opinion, we did not expressly discuss the possibility of willful misconduct grounds.

Another problem with allowing remands, without the limitation described above, is that it is a single-edged sword, cutting only against the working person. If the employers here had not lost before us on the voluntary quit issue (as they justly have), and our decision had gone in favor of the employers on that question, then to give the workers a second chance, would, of course, be logically impossible; the cases would be over and done.

These cases, where the employers and the Commonwealth failed to use the ample available opportunities at least to raise and claim the theories they are now being authorized to pursue, should be likewise treated as concluded.

President Judge CRUMLISH joins this dissent.

Judge PALLADINO joins this dissent.

---

In *McCarty v. Unemployment Compensation Board of Review*, 33 Pa. Commonwealth Ct. 225, 380 A.2d 1331 (1978) we reversed and granted benefits, noting that the board did not consider the question of willful misconduct.