631 A.2d 686

**MICHAEL A. TOKARSKY, JR. TRUCKING, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 1993.

Decided July 7, 1993.

Publication Ordered Sept. 3, 1993.

24

Diane M. Tokarsky, for petitioner.

No appearance, for respondent.

Carolyn L. Carter, for intervenor.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Michael A. Tokarsky, Jr. Trucking, Inc. (Employer) appeals an order of the Unemployment Compensation Board of Review (Board) which reversed an order of the referee denying benefits to William A. Hammond, Jr. based upon section 402(e) of the Unemployment Compensation Law (the Law),

Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e) (willful misconduct). We affirm.

Hammond worked for Employer from August of 1990 to June of 1991 as a tractor trailer driver. On June 21, 1991, Michael A. Tokarsky, Jr., owner and president of Employer, fired Hammond after a load had shifted on the trailer that Hammond was hauling. Hammond applied for benefits and the Office of Employment Security (OES) denied his application. Hammond appealed but failed to appear for a telephonic hearing held on September 25, 1991. At that hearing, Employer's owner was the sole witness to testify; he described the incident which led to Hammond's termination. The referee credited the testimony of Tokarsky and denied benefits, concluding that Hammond was ineligible for benefits because he was guilty of willful misconduct.

Hammond filed a timely appeal of the referee's decision. Therein, he requested another hearing, alleging that he had not received notice of the first hearing. The Board remanded for another hearing and one was scheduled for February 7, 1992. Because Employer had not received some documents submitted by Hammond and his attorney, the referee continued the hearing. On March 3, 1992, the hearing was conducted. At the beginning of the hearing, the referee asked Employer's witnesses to identify themselves. In addition to the owner, his sons, Michael J. Tokarsky, chief mechanic and safety director, and Timothy Tokarsky, operations director, identified themselves.

Hammond testified initially on his failure to appear at the first hearing. He stated that after appealing the OES determination on August 23, 1991, he heard nothing for approximately a month. Hammond stated that he contacted the OES but nobody could give him any information. Upon one visit to the OES to comply with the weekly reporting requirement, he was informed that the hearing had already been held. He contacted an attorney and filed an appeal. Hammond testified that he never received notice of the 1991 hearing.

Following Hammond's testimony concerning his failure to appear at the first hearing, Employer's owner testified. He first stated that all new employees are instructed on how to secure various loads that are being hauled. The owner then described four incidents which resulted in the firing of Hammond. On March 25, 1991, Hammond was hauling coils of steel wire. According to the owner, 22,000 pounds of steel shifted towards the front of the trailer. On April 10, 1991, Hammond arrived at Employer's terminal with a load that had not been properly secured or covered with a tarpaulin. On May 5, 1991, Hammond arrived at the terminal with a load of shingles that were not secured by chains or covered with a tarpaulin. Additionally, according to the owner, the shingles were improperly loaded because the entire shipment was placed in one pile in the middle of the trailer, rather than being divided into two groups, with one-half going on the front of the trailer and the other half in the rear. The final incident occurred on June 21, 1991, the day Hammond was fired. The owner testified that when Hammond arrived at the terminal, his load of round steel bars had shifted because Hammond failed to secure the load with sufficient chains. As a result of the shifting load, the chains and tarpaulins were damaged. The owner also testified that Hammond was driving at an excessive rate of speed when he entered the terminal. The owner offered that properly securing a load was simply a matter of "common sense".

Employer next offered the testimony of the Michael J. Tokarsky, the owner's son. Hammond's attorney immediately objected to this testimony, arguing that the owner was the only witness identified by Employer on the form required by 34 Pa.Code § 101.124 for hearings conducted by telephone. The referee allowed the testimony, subject to the Board's review of his ruling. Hammond also objected when the testimony of Timothy Tokarsky was offered; the referee made the same ruling and allowed the testimony. Both sons corroborated their father's testimony and specifically testified that they had instructed Hammond on how to secure his loads properly.

Hammond finally testified in his own behalf. He admitted that when he was first hired, one of the owner's sons offered instructions on how to secure the specific loads being hauled. Hammond testified, however, that on March 25, 1991, he hauled coils of steel cable for the first time and had never been given instruction on the proper manner of securing such a load. He testified that he secured the load as he thought best. As to the incident of April 10, 1991, Hammond admitted that he had incorrectly secured the load and testified further that he was not aware that he had to read the bill of lading for instructions on whether a tarpaulin was required. Hammond also refuted Employer's evidence that the May 13, 1991 load of shingles was not covered with a tarpaulin. He testified that he had been reprimanded for the failure to split the shipment into two parts but explained that a number of trucks carrying the same cargo had been loaded exactly the same way. As to the final incident, Hammond testified that he was carrying round bars of steel for the first time. The cargo weighed almost 30,000 pounds. Hammond testified that he used four chains to secure the cargo. When making a sharp turn on an exit ramp near the terminal, Hammond felt the load shifting. He checked the cargo and determined that it would not fall off the trailer. Hammond then drove at no more than twenty miles per hour for the remaining ten miles to the terminal. Hammond specifically denied that he was driving too fast when he entered the terminal. Hammond also testified that the chains and tarpaulins were damaged prior to the incident, contrary to Employer's assertion that the shift of the load had caused the damage.

Following the completion of the hearing, a transcript thereof was forwarded to the Board. Upon review of the hearing transcript, the Board chose, in large part, to credit Hammond's testimony. It first found that Hammond had never received notice of the first hearing. The Board next held that the testimony of the two Tokarsky sons should have been excluded. Finally, the Board made the following relevant findings of fact:

10. On March 25, 1991, [Hammond] had a load of steel wire coils on carriers. [Hammond] had not received instructions on how to chain down this kind of load and secured it with chains around the coils and across the top.

11. Because [Hammond] did not know that coils had to be secured by chaining them to wood in the back, the coils shifted to the front of the vehicle and [Hammond] was verbally warned for improperly securing the load.

12. On April 12, 1991, the employer observed [Hammond] with a load that had no chain across the back and no tarp. [Hammond] had been failing to read the bills of lading with regard to tarping.

13. The employer told [Hammond] that the employer would not tolerate loads with insufficient chains and without a tarp.

14. On May 13, 1991, [Hammond] brought in a load of shingles at 49,000 pounds. The load did have a tarp but the employer was concerned because he felt the load was improperly balanced. Half of the weight should have been in the front, and half in the back, with space in between to equalize the weight on the axles.

15. The men who had been loading the trailers that day loaded all of the trailers, including [Hammond's] in the same way in the center of the truck.

16. [Hammond] was reprimanded for improper balance of the load.

17. On June 21, 1991, [Hammond] was hauling a load of about 30,000 pounds consisting of four round bars of steel about 20 feet in length and ¾ inch rods about 10–15 feet in length.

18. The round bars were secured with a chain each, front and back, in the front of the truck. The rods were secured with two chains in the back of the truck.

19. [Hammond] had not previously transported round bars.

20. As [Hammond] came around a sharp turn on the exit ramp going back to the terminal, the load shifted.

21. [Hammond] was not speeding and was driving at 20 miles per hour or less.

22. After checking to make sure the load would not tip off the truck, [Hammond] drove at a slow rate of speed to the terminal ten miles away.

23. The entrance to the terminal itself is uphill precluding a fast rate of speed when pulling such weight. [Hammond] entered the terminal at a slower rate of speed that usual.

24. The employer observed the shifted load and discharged [Hammond] for failure to secure loads safely.

25. The employer believed that 'common sense' should have told [Hammond] that round bars would 'naturally' require the use of additional chains because they shift more easily that flat ones.

26. The load itself was not damaged. The employer alleges that the shifting of the load damaged the tarps and stretched the chains.

27. The tarps and chains were already in a damaged condition.

(Board's decision and order, 6/25/92.) The Board went on to conclude that while Hammond may have been incompetent and lacked common sense, his conduct did not rise to the level of willful misconduct. Accordingly, the Board reversed the referee's order and awarded benefits. Employer seeks our review.[1]

█ Employer first argues that the Board erred in remanding the matter for an additional hearing, thereby permitting Hammond to testify. In support of its argument, Employer relies upon that line of cases which hold that a claimant cannot justify a late appeal by claiming that notice of a decision was not received when that notice is mailed to the last known address and is not returned as undeliverable by the postal authorities. *Mihelic v. Unemployment Compensation Board of Review,* 41 Pa.Commonwealth Ct. 546, 399 A.2d 825 (1979).

---

1. Our scope of review is limited to deciding if a party's constitutional rights were violated, if an error of law was committed and making certain that all necessary finding of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

Employer argues that the same standards should apply to the failure of a claimant to attend a hearing. We cannot agree. The failure to appeal within the time required by a statute raises jurisdictional questions. Suffice it to say that such jurisdictional questions are different from the failure to appear at a hearing.

In section 504 of the Law, the Legislature has provided in pertinent part, that "[t]he board shall have the power, on its own motion, or on appeal, to . . . direct the taking of additional evidence." 43 P.S. § 824. With regard to this section, we have stated that "the statute imposes no restrictions upon such a remand." *Clowney v. Unemployment Compensation Board of Review*, 54 Pa.Commonwealth Ct. 382, 386, 421 A.2d 515, 517 (1980). Furthermore, 34 Pa.Code § 101.104(c) provides, "[T]he Board, in its discretion, may direct the taking of additional evidence, if in the opinion of the Board, the previously established record is not sufficiently complete and adequate to enable the Board to render an appropriate decision." In *Clowney*, we stated that this section "grants wide latitude to the Board in ordering a remand. . . ." *Id.* at 386, 421 A.2d at 516. Because of the circumstances of this case, the board properly exercised its discretion in ordering this remand. Therefore, we reject Employer's first allegation of error.

Employer next argues that the Board erred in refusing to consider the testimony of the two Tokarsky sons. 34 Pa.Code § 101.124 provides:

(b) A notice of hearing where testimony by telephone is to be taken will be accompanied by a copy of this subchapter and indicate which counsel, authorized agents, *parties and witnesses are scheduled to appear and testify by telephone.*

(c) A party intending to appear, to offer testimony of witnesses or to be represented by telephone, shall, in advance of the beginning of the hearing, supply the tribunal with the name, location and telephone number from which the persons will appear and testify. A *party or a witness*

*not so identified to all parties prior to the beginning of the
testimony may not testify by telephone.* (Emphasis added.)

The Board explained its refusal to consider the testimony in
question as follows:

> §§ 101.124(b) & (c) must be read in conjunction with each
> other. The record shows that the employer was sent tele-
> phone hearing regulations at least *three times* and acknowl-
> edged receipt of a copy as early as the Referee's hearing of
> September 25, 1991. Only one employer witness, Michael
> A. Tokarsky, Jr. was scheduled to testify at the Referee's
> hearing and he was, in fact, the only employer witness to
> appear, be identified, and to testify. Only this same witness
> was listed on the hearing notice for the remand hearing of
> February 7, 1992, and only he appeared and was identified
> and testified. Only this same witness was named on the
> notice for the continuation of this hearing on March 3, 1992,
> which was in effect the *same* hearing as that begun on
> February 7, 1992. Yet on March 3, 1992, the employer
> brought in two additional witnesses in violation of the
> regulations of which it had ample knowledge.

(Board's decision and order, p. 4, 6/25/92) (emphasis in origi-
nal.)

It is well settled that an administrative agency's
"interpretation of its own regulations is entitled to deference
and should not be disregarded unless it is shown to be clearly
erroneous or inconsistent with the regulation." *Saia's Used
Cars v. Commonwealth,* 142 Pa.Commonwealth Ct. 27, 33, 596
A.2d 1212, 1216 (1991). We will not conclude that the inter-
pretation set forth by the Board is clearly erroneous. More-
over, these regulations were adopted following our decision in
*Knisley v. Unemployment Compensation Board of Review,* 93
Pa.Commonwealth Ct. 519, 501 A.2d 1180 (1985). In that case,
we expressed an uneasiness with the lack of regulations on
hearings conducted by telephone vis a vis due process con-
cerns. The Board's interpretation of the regulation is in
keeping with our concerns set forth in *Knisley* and is not

inconsistent with the regulation. Because all of the Board's observations in this regard are supported by the record, we do not believe it erred in refusing to consider the testimony of the owner's two sons.[2]

■ Employer proffers two arguments in support of its position that the testimony should have been considered. It first argues that the two witnesses were identified before testimony was actually taken on March 3, 1992. Assuming that this assertion is correct and Employer complied with subsection (c), we merely note that Employer makes no argument concerning compliance with subsection (b). The Board's interpretation of the regulation requires compliance with both subsections. Furthermore, Employer argues that Hammond did not object to the two witnesses at the time they were first identified. Employer argues that by waiting until the witnesses were actually called, Hammond has waived any objection. We reject this argument; no objection is required until the questioned evidence is actually presented. For all of these reasons, Employer's second argument is without merit.

■■ Employer finally argues that the Board erred in concluding that Hammond was not guilty of willful misconduct. Employer's argument in this regard is premised upon its version of the facts. In unemployment compensation proceedings, however, the Board is the ultimate factfinder. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). The Board in this case chose to credit the testimony of Hammond over that offered by Employer and we cannot interfere with that decision. Furthermore, Employer does not argue that any findings of fact are not supported by substantial evidence. We are thus left with one question, i.e., do the factual findings in this case support the conclusion that Hammond was not guilty of willful misconduct? We believe that they do.

2. The Board also stated that its decision would been the same even if it had admitted the testimony in question.

Employer essentially argues that it met its burden of proving willful misconduct by proving that Hammond had been negligent on a recurrent basis.[3] In *Coulter v. Unemployment Compensation Board of Review*, 16 Pa.Commonwealth Ct. 462, 466, 332 A.2d 876, 879 (1975), we stated:

> A single dereliction or a minor and casual act of negligence or carelessness does not constitute willful misconduct. Rather, it is a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce *substantial financial loss* to the employer which will support the conclusion that an employe is guilty of willful misconduct. (Emphasis added.)

It must be pointed out that the Board's findings show only one incident of "negligence", i.e., failing to properly secure a load after receiving instructions on how to do so. The Board accepted Hammond's testimony that in most of the incidents, he had never received instruction in the proper manner of securing the loads. Further, as to the final incident, the Board specifically found that Hammond used the number of chains required by state and federal regulations to secure his load. The Board further found that Hammond had not been driving too fast.

We must next note that Employer has presented no evidence of "substantial financial loss". The record is clear that none of the cargo being hauled was ever damaged. Employer asserts only that its tarpaulins and chains were damaged in the final incident but the Board chose to believe Hammond's

---

3. In *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 625 A.2d 622 (1993), the Supreme Court held that mere negligence cannot constitute willful misconduct and that an employer would be required to prove that an employee was guilty of intentional or deliberate conduct to prove willful misconduct. All of the parties to this case have based their arguments on the now discarded theory that persistent negligence could constitute willful misconduct. Nevertheless, even applying *Myers* would not lead to a different result. While the employer might well argue that Hammond's actions were intentional and deliberate, the Board chose to believe the testimony of Hammond over that of the employer. If the employer was unable to meet its burden of proving persistent negligence, it obviously could not have met the higher burden of proof set forth in *Myers*.

testimony that those items were in a damaged condition before the incident. Because an employer is required to prove "substantial financial loss" to prove willful misconduct in this type of case, we believe Employer has failed to meet its burden.[4]

For all of the foregoing reasons, we believe that the Board was correct in concluding that Hammond was not guilty of willful misconduct. Accordingly, we affirm.

## ORDER

AND NOW, this 7th day of July, 1993, the June 25, 1992 order of the Unemployment Compensation Board of Review at No. B–300153 is affirmed.

---

4. *Compare Seyler v. Unemployment Compensation Board of Review*, 85 Pa.Commonwealth Ct. 392, 481 A.2d 1262 (1984) (two accidents within six months causing almost $5500 in damage held to be willful misconduct); *Drake v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 34, 470 A.2d 1115 (1984) (four accidents in less than two years causing over $1300 in damages held to constitute willful misconduct); *and Schappe v. Unemployment Compensation Board of Review*, 38 Pa.Commonwealth Ct. 249, 392 A.2d 353 (1978) (two accidents within a month causing $1200 in damages held to be willful misconduct). In this context, we must note the case of *Walton v. Unemployment Compensation Board of Review*, 96 Pa.Commonwealth Ct. 472, 508 A.2d 380 (1986). In that case, the employee had *nine accidents in less than a year*. We noted that even if the accidents did not involve "substantial" financial loss, the employee could still be guilty of willful misconduct. Obviously, the number of accidents was the deciding factor. In the present case, we do not have such a large number of incidents of negligence on Hammond's part and *Walton* is distinguishable.