**Lisa J. GOLD, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 27, 1997.

Decided Sept. 17, 1997.

Brian S. Rudick, Pittsburgh, for petitioner.

Sarah C. Yerger, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

Lisa J. Gold (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision to deny her benefits on the basis that she voluntarily quit her employment.

The record reveals that Claimant was employed by PA Beauty Supply (Employer) as a sales representative in Pittsburgh. Claimant began working for Employer in April, 1996, at which time she was informed that all sales representatives were required to attend several out-of-state mandatory meetings during the course of the year. When Claimant learned that a mandatory seminar was to be held from Friday, August 23, 1996, to Sunday, August 25, 1996, in Long Island, New York, she informed Employer's president, Mr. William Gunzburg, that she suffers from severe anxiety associated with commuting long distances in automobiles. Mr. Gunzburg explained to Claimant that she would have to take the trip to Long Island with four other employees by automobile, and that the trip would be made in two days. Claimant and the other employees were to drive from Pittsburgh to Harrisburg, where they would spend the night, and then drive the next day to Long Island. Mr. Gunzburg told Claimant that the trip home would be made in one day, and that the drive would take approximately six to six and one-half hours. Claimant agreed to attend the seminar.

Mr. Gunzburg testified before the referee that he told Claimant that any employee who did not attend the seminar in Long Island would be discharged. He stated the following:

[Q:] ... Specifically what was she told about the seminar, and was she told anything ... as to the consequences if she failed to attend the seminar?

[A:] She was told that she would be discharged if she did not attend the seminar....

[Q:] You stated to her that if she did not attend, she would be fired, or words to that affect is that your testimony?

[A:] Yes.

. . . .

[Q:] In the course of [Claimant's] prior ... months of employment with you, when was the last time that you told her that the failure to do something would result in her discharge?

[A:] I don't believe I told her that with anything else.

(Notes of Testimony (N.T.), 10/10/96, at 57–58.)

On August 23, 1996, the day of departure for Long Island, Claimant learned from the American Automobile Association that the total driving time would not be six hours, but rather eight hours. Claimant then attempted to contact Mr. Gunzburg in order to speak with him about her fear of driving for eight hours. As Claimant was unable to reach Mr. Gunzburg, she left a message for him that she would not be attending the seminar in Long Island.

On Sunday, August 25, 1996, Mr. Gunzburg called Claimant from his hotel in Long Island and left the following message: "Hi Lisa, it's Bill. You don't need to come in Monday. Please come in Tuesday and bring in your stuff." [1] (N.T., 10/10/96, at 46.)

Claimant reported to work on Tuesday, August 27, 1996, accompanied by a male friend. She brought with her all of her supplies, her orders and money and put them on the counter in front of Mr. Gunzburg. Thereafter, Mr. Gunzburg handed Claimant her final check, and Claimant told Mr. Gunzburg that she had called some of her clients and told them that she was leaving, and that she especially wanted Mr. Gunzburg to look after one particular client. Mr. Gunzburg then wished Claimant luck, and she left the office. (N.T., 10/10/96, at 48,49.)

At the hearing before the referee, Claimant testified that she interpreted the message that Mr. Gunzburg had left on August 25, 1996 to be a discharge from employment. However, Mr. Gunzburg testified that he did not intend to discharge Claimant. Rather, he wanted to meet with Claimant in order to discuss her absence from the seminar, and since he would not be at work on Monday, he wanted her to come in on Tuesday. He also stated that by telling Claimant to bring her "stuff" on Tuesday, he merely meant that she was to bring that which she normally brought in on Mondays, that is, her sales orders, receipts and moneys. (N.T., 10/10/96, at 45.)

The Board, in affirming the referee, concluded that Mr. Gunzburg's message did not contain the necessary intent and immediacy of a discharge. The Board stated, "Claimant mistakenly believed this to be a discharge but the president did not intend or state that [C]laimant be discharged." (Board's decision at 3.) Thus, the Board concluded that Claimant voluntarily quit her employment.

On appeal, Claimant contends that the Board erred in concluding that she voluntarily quit. After reviewing the record and the relevant case law in this matter, we must agree with Claimant that the Board erred in affirming the referee.[2]

Specifically, Claimant argues that the Board's determination is inconsistent with the following decisions of this Court: *Roberts v. Unemployment Compensation Board of Review,* 61 Pa.Cmwlth. 21, 432 A.2d 646 (1981); *Torsky v. Unemployment Compensation Board of Review,* 81 Pa.Cmwlth. 642, 474 A.2d 1207 (1984); and *Thomas v. Unemployment Compensation Board of Review,* 14 Pa.Cmwlth. 398, 322 A.2d 423 (1974).

In *Roberts,* this Court concluded that the claimant, a licensed practical nurse at Kane Hospital in Allegheny County, was discharged when he received a registered letter from his supervisor. The letter was on pink-colored paper, which was connotative of a firing notice, and was labeled "Official Reprimand Form." It accused the claimant of incompetence in "passing medicines safely" and concluded by stating, "[Y]ou will no longer function at Kane Hospital under the job description of a Licensed L.P.N. as of June 6, 1979." *Roberts,* 432 A.2d at 647.

The claimant received this letter while on a scheduled vacation. Believing that he had been discharged, the claimant did not return to work at the end of his vacation. Shortly thereafter, the hospital informed the claimant that his employment had been terminated as a voluntary quit because of his failure to return to work.

---

1. Claimant testified to the same message left by Mr. Gunzburg on her answering machine.

2. This Court's review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitu-

tional rights were violated, or whether an error of law was committed. *Michael A. Tokarsky, Jr. Trucking, Inc. v. Unemployment Compensation Board of Review,* 158 Pa.Cmwlth. 23, 631 A.2d 686, 690 n. 1 (1993).

We explained in *Roberts* that "a finding of voluntary termination is essentially precluded unless the claimant had a conscious intention to leave his employment." *Id.* 432 A.2d at 648. We then found that the claimant lacked the necessary element of intent. Because the claimant did not have a "conscious intention" to leave his employment, and because his belief that he had been discharged was " 'consistent with ordinary common sense and prudence under circumstances that were real, substantial and reasonable,' " we concluded that the claimant did not voluntarily quit. *Id.* 432 A.2d at 648 (citation omitted).[3]

Likewise, in the instant matter, a review of the record indicates that Claimant did not have a "conscious intention" to leave her employment. In light of the fact that her employer informed her that she would be discharged if she did not attend the seminar, we find her belief, upon listening to Mr. Gunzburg's message on August 25, 1996, that she had been terminated, to be "consistent with ordinary common sense and prudence."

██ Pursuant to our decision in *Roberts*, it is clear that the determining factor between whether a claimant was discharged or has voluntarily quit is the state of mind of the **claimant**. As such, the Board erred in basing its adjudication on whether the **employer** intended to discharge Claimant.

Additionally, we agree with Claimant that our decisions in *Torsky* and *Thomas* are controlling in this matter. In *Torsky*, the claimant, who worked as a laborer on a peach orchard, was told by his employer that if he did not meet the production standards of peaches picked by the following day, he should not bother reporting back to work. Because the claimant did not meet the production standard on the following day, he

assumed that he was automatically terminated.

This Court determined in *Torsky* that the employer's language amounted to a discharge, and thus, we awarded the claimant unemployment compensation benefits. Indeed, we held that an employee may assume that he has been discharged even though the employer has not specifically used the words "fired" or "discharged." We stated that "the inference may be made from other language of equal immediacy and finality." *Torsky*, 474 A.2d at 1209.

Similarly, in *Thomas*, the claimant informed his employer that he would not be able to work on a specific Sunday. The employer replied that if he did not report to work on that Sunday, "he wouldn't have a job." *Thomas*, 322 A.2d at 423. The claimant did not report to work on Sunday, and, therefore, assuming that he had been discharged, he did not report to work any day thereafter. This Court concluded that the claimant was discharged by his employer and that he did not voluntarily quit his job.

In the instant matter, Claimant argues that just like the claimants in *Torsky* and *Thomas*, she was given an "ultimatum" that if she failed to do what her employer demanded, that is, attend the seminar in Long Island, she would be fired. We have to agree.

As mentioned above, Mr. Gunzburg testified that he told Claimant that she would be discharged if she failed to attend the seminar. He stated, "... I also ma[d]e it very crystal clear that this was going to be a situation where there would be no exception [to employees being discharged for failure to attend the seminar] because of the magnitude of this event." (N.T., 10/10/96, at 60.) In light of this testimony, we conclude that it

---

3. We note that in *Roberts*, we remanded the case, pursuant to *Wing v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 103, 426 A.2d 198 (1981), to "give the employer an opportunity to show that this claimant was discharged ... for willful misconduct." 432 A.2d at 648. The Pennsylvania Supreme Court reversed *Wing* insofar as our order remanded for the determination of whether the claimant was fired for willful misconduct. The Court concluded that the employer had waived the issue by not raising it

before the Bureau of Employment Security. *See Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981).

In the case *sub judice*, Employer did not raise the issue of willful misconduct before the referee or the Board, nor does Employer raise it on appeal to this Court. Therefore, the principle regarding a claimant's intent in a voluntary quit case for which *Roberts* is authority governs the instant appeal.

was reasonable for Claimant to assume, upon hearing Mr. Gunzburg's message on August 25, 1996, that she had been discharged for failing to attend the seminar.

Accordingly, we reverse the order of the Board.

### ORDER

NOW, September 17, 1997, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.