**Chidozie C. DIKE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 3, 2013.

Decided June 18, 2013.

---

Drake P. Bearden, Jr., Mount Laurel, NJ, for petitioner.

Shawn Westhafer, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Chidozie C. Dike (Claimant) petitions for review of the September 26, 2012 order of the Unemployment Compensation Board of Review (Board) affirming a referee's determination that Claimant is ineligible for unemployment benefits pursuant to section 402(b) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant worked at the Devereux Foundation (Employer) as a direct care professional from December 2010, until December 9, 2011, at a final rate of pay of $12 an hour. (Finding of Fact (F.F.) No. 1.) Employer had a "return home" policy that allowed employees to return home for certain reasons, including attending a funeral for a family member. The policy provided that, in order for an employee to request "return home" leave to attend a funeral, the employee must submit to Employer a completed application, a copy of his plane ticket or travel itinerary, and written documentation of the death or funeral, including a doctor's note, document from a funeral home, death certificate, or other written record. (F.F.Nos.4–6.)

On December 6, 2011, Claimant met with Carol Dawson (Dawson), Employer's Human Resources Specialist, and requested leave from December 20, 2011, until January 31, 2012, to attend his grandfather's funeral in Nigeria. (F.F.Nos.2–3.) Dawson provided Claimant with the application for "return home" leave and requested that he complete the form and submit his travel itinerary/plane ticket and a written record of his grandfather's death or funeral. (F.F.Nos.4–6.) Claimant replied that he did not know how to obtain written documentation of the funeral from Nigeria. Claimant asked what would happen if he did not report for his next scheduled shift, and Dawson explained Employer's job abandonment policy to Claimant. (F.F.Nos.9–10.)

Claimant did not provide Employer with the completed application, documentation of the funeral, or his travel itinerary, and left for Nigeria on December 22, 2011. (F.F.Nos.7–8, 14.) Claimant was scheduled to work on December 24, 2011, but did not report to work on that date or thereafter. (F.F.Nos.11–12.) By letter dated January 9, 2012, Employer notified Claimant that it deemed his actions job abandonment and that his employment was terminated. (Reproduced Record (R.R.) at 21 a, Employer's Exhibit 5.)

Claimant filed for unemployment benefits with the local service center on April

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that a claimant shall be ineligible for unemployment benefits for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

29, 2012. On May 23, 2012, the service center issued a determination advising Claimant that he was ineligible for benefits under section 402(b) of the Law. Claimant appealed the determination, and a referee held a hearing on July 9, 2012.

Claimant testified that he worked every other weekend for Employer. (R.R. at 4a–5a.) Claimant testified that when he met with Dawson and requested a leave of absence, she did not give him an application form to complete and return. (R.R. at 16a.) He also testified that he was unaware of Employer's "return home" policy and thought he could request time off two weeks in advance. (R.R. at 9a.) Claimant testified that after the meeting, he attempted to get a death certificate from Nigerian authorities, but he was not understood and was unable to get documentation before he departed for the funeral, which took place on December 26, 2011. (R.R. at 5a–8a.) Claimant further testified that when he was in Nigeria and requested documentation, he was given a flyer as proof of the death and he mailed this flyer to Employer. (R.R. at 6a–7a, 15a.) Claimant also stated that he gave Employer a copy of his plane ticket before departing for Nigeria. (R.R. at 6a.) Claimant admitted that Employer never approved his leave of absence. (R.R. at 8a.)

Employer's Human Resources Director, Richard Latella (Latella) testified that Claimant's request for "return home" leave was not granted because he did not return a completed application. (R.R. at 10a.) Latella testified that Employer terminated Claimant after he did not appear for his scheduled shift on December 24, 2011, or several shifts thereafter. (Id.) Latella explained that Employer's job abandonment policy provides that an employee who does not show up and fails to call off for three successive days of sched-

uled work is considered to have abandoned his job and is terminated. (Id.)

Dawson testified that at her meeting with Claimant, she gave him the application for leave forms and informed him that merely submitting a request for leave was inadequate and that he must provide documentation of his grandfather's death or funeral to complete his request for leave. (R.R. at 12a.) She also testified that Claimant did not show her his plane ticket or provide her with a copy of it. (Id.) Dawson stated that she did not hear from Claimant following their December 6, 2011 meeting. (Id.) Dawson also stated that Claimant was terminated after failing to show up for four shifts. (R.R. at 13a.)

By order dated July 10, 2012, the referee affirmed the service center's determination that Claimant was ineligible for benefits under section 402(b) of the Law. The referee held that Claimant voluntarily left his job for personal reasons and that he did not attempt to preserve his employment by completing Employer's application for "return home" leave. The referee further noted that a claimant's voluntary termination of his employment for personal reasons is not a necessitous and compelling reason for leaving.

Claimant appealed to the Board, arguing that he did not voluntarily terminate his employment and that he attempted to preserve his employment. The Board adopted and incorporated the referee's findings of fact and specifically noted that it found Employer's witnesses credible and resolved the conflicts in the testimony in Employer's favor. By order dated September 26, 2012, the Board affirmed the referee's denial of benefits under section 402(b) of the Law.

■ Claimant appeals to this Court,[2] arguing that he did not voluntarily leave his

---

2. Our scope of review in an unemployment compensation appeal is limited to determin-

job when he missed several days of work to attend his grandfather's funeral. Relying on *Firmstone v. Unemployment Compensation Board of Review,* 29 Pa.Cmwlth. 158, 370 A.2d 749 (1977), Claimant asserts that an employee does not voluntarily leave work when the employee notifies his employer that he is leaving to attend a funeral.

 Initially we note that the question of whether a claimant voluntarily left work is a question of law. *Id.* at 750. To determine whether a claimant voluntarily quit, we examine the totality of the circumstances surrounding the claimant's separation. *Monaco v. Unemployment Compensation Board of Review,* 523 Pa. 41, 46, 565 A.2d 127, 129 (1989).

In *Firmstone,* the claimant was employed as a painter and failed to report for work because he left town due to a death in his family. The claimant did not notify his employer that he would not be in and missed two days of work. The employer then advised the claimant that he had been replaced. The claimant applied for unemployment benefits, and his application was denied. Both the referee and the Board affirmed, holding that the claimant was ineligible for benefits under section 402(b) of the Law because he voluntarily left his job.

The claimant appealed to this Court, and we reversed, holding that although the claimant's failure to report to work on two consecutive days may have constituted just cause for his dismissal, his conduct did not amount to voluntarily leaving his job. *Firmstone,* 370 A.2d at 750. We noted that absence from work may become a voluntary termination through a lapse of an unreasonable amount of time, but we did not find that an unreasonable amount of time had elapsed in that case.[3]

The Board argues that *Wing v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 103, 426 A.2d 198 (1981), not *Firmstone,* is controlling in this case, and that because Claimant was aware that taking an unauthorized leave could result in his discharge and still took an unauthorized leave, Claimant voluntarily left his employment. We agree.

In *Wing,* the claimant, Shirley Wing (Wing), contacted her employer to discuss her vacation period. Although her employer did not give her permission to take vacation time, Wing believed that she was entitled to vacation time and did not report to work. The employer terminated Wing after she missed four days of work. Wing's application for unemployment benefits was denied. On appeal, the referee held that Wing voluntarily terminated her employment by abandoning her job and

---

ing whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence is such evidence as a reasonable mind might find adequate to support a conclusion. *Tapco, Inc. v. Unemployment Compensation Board of Review,* 168 Pa.Cmwlth. 292, 650 A.2d 1106 (1994).

**3.** Furthermore, we explained that had the Board ruled that the claimant's failure to notify his employer in advance of his planned absence constituted willful misconduct ren-

dering the claimant ineligible for benefits under section 402(e) of the Law, we would have affirmed the Board's denial of benefits. *Id.* However, we could not assume that the Board would have found willful misconduct on the part of the claimant when it did not consider that question, and so declined consideration of the issue. Section 402(e) of the Law provides that a claimant shall be ineligible for unemployment compensation for any week in which his or her unemployment is due to discharge or suspension from work for willful misconduct connected with his or her work. 43 P.S. § 802(e).

failing to keep her employer advised of her future intentions, rendering her ineligible for benefits pursuant to section 402(b) of the Law. *Id.* at 200.

On appeal to this Court, Wing argued that she was discharged for either failing to report to work or for taking an unauthorized vacation, and we agreed, holding that Wing had not abandoned her job and was therefore not ineligible for benefits under section 402(b) of the Law.[4] In so holding, we distinguished *Schwarzenbach v. Unemployment Compensation Board of Review*, 36 Pa.Cmwlth. 137, 387 A.2d 519 (1978). In *Schwarzenbach*, the claimant took an unauthorized leave and, after he missed two days of work, the employer sent the claimant a letter requesting that he contact the employer by the end of that week and advising him that his failure to do so would be deemed job abandonment. After the claimant failed to contact the employer by that date, the employer terminated the claimant. This Court affirmed the determination that the claimant's four-day unauthorized absence after a request for permission to take leave was denied constituted a voluntary termination of the claimant's employment. In distinguishing *Schwarzenbach*, we reasoned that "[t]he critical element in *Schwarzenbach* was that the employer notified the employee during the four-day unauthorized leave that his failure to contact the employer would be considered an abandonment of the employment." *Wing*, 426 A.2d at 200.

In *Wing*, this Court held that "[w]here requested vacations are denied, *and the employee is notified that taking the time will result in a discharge*, the resulting separation from employment is deemed voluntary." *Id.* (emphasis added). Furthermore, we explained that in cases such as *Firmstone*, the missing element is the employer's threat of discharge or the employer's informing the claimant that pursuing the vacation plans would result in a discharge. *Id.* at 201. Because Wing's employer never informed her that failure to return to work or contact the employer would result in her discharge, Wing's conduct, like the claimant's in *Firmstone*, did not amount to job abandonment. In contrast, the claimant's conduct in *Schwarzenbach* did amount to job abandonment because the employer's threat of discharge shifted "the onus of the choice of actions onto the employee, so that intention may reasonably be discerned in the employee's action or inaction." *Id.* at 200.

The distinction set forth in *Wing* applies here. Claimant specifically inquired what would happen if he took "return home" leave in the event his leave was not approved, Employer informed him that his unauthorized leave would amount to job abandonment and he would be terminated, and Claimant thereafter took an unauthorized leave. Claimant's conduct in taking leave when he was aware that it would result in termination evidenced an intention to voluntarily leave his job. *Wing; Schwarzenbach.* We note that Claimant does not argue on appeal that he had a necessary and compelling reason for voluntarily terminating his employment. Thus, the Board's conclusion that Claimant voluntarily left his job and is therefore ineligible for benefits pursuant to section 402(b) of the Law was proper.

Accordingly, we affirm.

---

4. In *Wing*, this Court noted that unauthorized absenteeism may constitute willful misconduct, and we remanded the matter to the Board to take additional evidence on that issue. However, on interlocutory appeal of the remand order, the Pennsylvania Supreme Court held that the issue of willful misconduct had been waived because the employer did not raise it before the Board. *Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981).

## *ORDER*

AND NOW, this 18th day of June, 2013, the September 26, 2012 order of the Unemployment Compensation Board of Review is affirmed.